UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| AARON CAMPELL | ) |
| Plaintiff, | ) |
| | ) Civil No. 10-151-GFVT |
| V. | ) |
| EQT PRODUCTION COMPANY, | ) **MEMORANDUM OPINION** |
| | ) **&** |
| Defendant. | ) **ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the defendant EQT Production Company's ("EQT") Motion for Summary Judgment. [R. 15, 16, 17.] Because the Court agrees that the plaintiff's claims fail as a matter of law, it will enter judgment in favor of EQT.

**I**.

Plaintiff Aaron Campell worked for EQT for over 16 years before being terminated in 2006. [R. 22 at 1.] Prior to his termination, Campell had been working as a well operator. [R. 17 at 1.] In early December of 2006, EQT began investigating reports that Campell had been using his company credit card to buy gasoline for his personal use. It also suspected that he intentionally damaged company property to collect pay for overtime work. [*Id*. at 3-4.] A staff attorney for EQT, Robert Frankhouser, investigated both of these allegations. Frankhouser analyzed mileage and gasoline use of two other EQT well operators who drove similar company vehicles and concluded that Campell had indeed used the company credit card for his personal use from July to December 2006. [*Id*. at 4.]

The suspicion regarding damage to company property arose when, on November 30, 2006, Campell turned in a time card indicating that he had worked 4 ½ hours of overtime the day before. [R. 17 at 2; R. 22 at 2.] Campell claimed the overtime was for repairing leaks (holes) in a pipe and indicated that the cause of the leaks was corrosion and natural forces. [R. 17 at 3; R. 22 at 3.] Frankhouser hired an independent company, Matco and Associates, to analyze the cause of the holes, and Matco determined that the holes were a result of "machining, most likely drilling." [R. 17 at 3.] Thus, Frankhouser concluded that Campell drilled holes in the pipes in order to be paid for overtime and then lied about the cause of the leaks.

Additionally, for several months, Campell periodically missed work and was given a sedentary duty assignment due to injuries and illnesses. During that time, he collected benefits and continued to be paid his regular well operator's rate. [R. 17 at 4-5; R. 22 at 3.] EQT contacted Campell multiple times to have him sign forms that would give EQT authorization to obtain his medical records regarding the absences and sedentary duty assignment. [*Id.*] After several failed attempts to get Campell to sign the forms, Frankhouser sent him a letter informing him that "failure to execute the [forms] on or before December 11, 2006 will result in disciplinary action up to and including termination from employment." [R. 17 at 5; R. 22 at 4.] Despite these repeated requests, Campell never signed the forms. [R. 17 at 6; R. 22 at 4.]

Campell took sick days on February 7, 8, and 9, 2007 and requested vacation days for the 12, 13, and 14 the following week. [R. 17 at 6; R. 22 at 4.] EQT's Vice President and General Counsel, Lewis Gardner, contacted Campell on Friday, February 9, 2007 to tell him that he must be present at a meeting that was to take place Monday, February 12. The purpose of the meeting was to discuss the investigations into Campell's misconduct. Campell told Gardner he would be

taking a vacation day on February 12, but Gardner insisted on Campell's presence at the meeting and told him that he could be subject to discharge if he did not attend. [R. 17 at 6-7; R. 22 at 5.] During this phone call, Campell told Gardner that his supervisor, Darrell Combs, and another employee were discriminating against him because of his race. [*Id.*] Campell did not attend the meeting and claims he was unable to attend due to illness.[1] [*Id.*]

Campell took the vacation days as planned the next week and also called in sick on Thursday, February 15. EQT had a sheriff deliver a termination letter to Campell's residence on Friday, February 16, 2007. [R. 17 at 8; R. 22 at 6.] The termination letter cited Campell's failure to attend the meeting, his failure to sign the medical release forms, the alleged vandalism of company property, and "other misconduct in the workplace" as reasons for his termination. [*Id.*] EQT claims the letter was delivered by the sheriff because Campell made threats to Gardner during the February 9 phone call, but Campell denies making any threats. [*Id.*]

Campell filed a grievance through his Union, claiming that the termination was without just cause. EQT denied the grievance. After three days of hearings, an arbitrator also denied the grievance and found that the termination was based on "gross and transparent insubordination" and "multiple inexcusable breaches of [Campell's] legitimate responsibilities to his employer." [R. 17 at 9-10; R. 22 at 6.] Campell then filed suit against EQT, claiming race and disability discrimination and retaliatory discharge, in violation of the Kentucky Civil Rights Act ("KCRA"). [R. 1, Attach. 1.] EQT removed the case to federal court, and this Court has jurisdiction over the parties because they are diverse and the amount in controversy exceeds

---

[1] Campell also alleges, apparently based on hearsay, that there were police officers waiting on him at the meeting. [R. 22 at 5.] EQT denies this.

$75,000. [*See* R. 1; R. 7.] EQT has made a motion for summary judgment on all three claims, and that motion is now ripe for review.

**II.**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated differently, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In reviewing a motion for summary judgment, the court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citation omitted).

**III.**

Pursuant to Kentucky law, it is unlawful for employers to discriminate against employees because of their race or because of a disability. K.R.S. 344.040. Courts interpret this statute consistent with Title VII of the Civil Rights Act of 1964 and look to federal case law construing Title VII when deciding cases brought under the Kentucky statute. *Brewer v. Hillard*, 15 S.W.3d 1, 10 (Ky. Ct. App. 1999). Under the KCRA, an employee can show discrimination either by offering direct evidence, by "presenting circumstantial evidence that permits an inference of

4

discrimination," or by showing "mixed motives" for the adverse employment action. *Bergman v. Baptist Healthcare System, Inc.*, 167 Fed. App'x 441, 445 (6th Cir. 2006). Direct evidence is evidence that "requires the conclusion that unlawful discrimination was at least a motivating factor" in the adverse employment decision, and it needs no inference. *Id*. (citation and quotations omitted). In this case, Campell does not have direct evidence of discrimination. Neither has he properly pled a "mixed motives" claim. When a plaintiff presents circumstantial evidence, he or she must first establish a prima facie case and then challenge the employer to rebut the allegations by offering a legitimate, non-discriminatory reason for his actions. If the employer offers such a reason, then the plaintiff must show that the reason offered is merely a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In this case, both parties agree the *McDonnell Douglas* framework applies to all three claims. [R. 16 at 6; R. 22 at 7.]

**A.**

To make out a prima facie case of racial discrimination Campell must show: 1) he belongs to a statutorily protected class, 2) he was subject to an adverse employment decision, 3) he was qualified for the job or was meeting his employer's legitimate expectations, and 4) he was replaced by a person outside of his protected class or was treated differently than other similarly situated employees who are not members of the protected class. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). Campell cannot make out a prima facie case because he has failed to show that he was replaced by a person outside of the protected class or treated differently than other similarly situated employees.

In this case, the first two elements of the prima facie case are not in dispute. EQT does

dispute the third and fourth. EQT argues that Campell was not meeting legitimate expectations because he had engaged in several instances of misconduct before being fired. In support, EQT lists all the instances of misconduct that led to the investigation and ultimately to Campell's termination. [*See* R. 16 at 9.] This argument is misplaced, however, because in this Circuit, the third factor in the prima facie case is "to be assessed in terms of whether [the plaintiff] was meeting the employer's expectations *prior to and independent of* the events that led to the adverse action." *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006) (citations omitted) (emphasis added). *See also Cline v. Catholic Diocesan School of Toledo*, 206 F.3d 651, 662-63 (6th Cir. 1999).

"When assessing whether a plaintiff has met [his] employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason produced by the defense as its reason for terminating plaintiff." *Quinn-Hunt v. Bennett Enterprises, Inc.*, 211 Fed. App'x. 452, 457 (6th Cir. 2006) (citation and quotations omitted). Courts are not to consider the defendant's justification for terminating the plaintiff until the second and third stages in the *McDonnell Douglas* framework (i.e. legitimate reason for termination and pretext). *Id*. A plaintiff can show he was meeting legitimate expectations by presenting credible evidence that he possessed *objective qualifications*, such as the minimum requirements in education and experience in the relevant industry, and by showing a satisfactory record with the employer prior to the events leading to termination. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003). Campell has not provided much evidence on this issue. The record does indicate that he was a qualified well operator [R. 17 at 1], that he worked for EQT for over sixteen years [R. 22

6

at 1], and that he "was not written up for anything" until the events leading to his termination. [*Id*. at 8.] Thus, the Court concludes that this element of the prima facie case is met.

Campell has not, however, presented sufficient evidence to support a finding that he was treated differently than similarly situated employees outside of his protected class.[2] A plaintiff must show that the employees he claims were treated more favorably "were similarly situated in all relevant respects." *Tysinger*, 463 F.3d at 574 (citation and quotations omitted). This means that, to the extent these factors are relevant, the similarly situated individuals must "have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992). Here, Campell has alleged generally that he was treated differently than similarly situated persons outside of his class, but he has failed to specifically identify any such employees by name or by other distinguishing factor.

Campell states in his response, "The Defendant can point to no Caucasian employee [that was] called to a meeting with police waiting on them" and "The Defendant can point to no white employee [whose] termination papers [were] served by the local Sheriff." [R. 22 at 8.] Campell misapplies the *McDonnell Douglas* framework. At this stage, EQT does not bare the burden of showing similarly situated employees who were treated similarly to Campell. The burden is on *the plaintiff* to show he was treated differently than similarly situated employees. *McDonnell Douglas Corp.*, 411 U.S. at 802 ("The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination.").

---

[2] Neither does he attempt to argue he was replaced by someone outside his protected class.

To defeat a motion for summary judgment, a non-movant must present some affirmative evidence beyond the pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325 (1986). *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (non-movant must "do more than simply show there is some metaphysical doubt as to the material facts") (citations omitted). Campell has not submitted names or descriptions of any similarly situated employees outside his class who were treated differently. Therefore, the Court cannot engage in any meaningful analysis under this factor. *See Lott v. ICS Merrill*, No. 09-cv-14382, 2011 WL 1595060, at *4 (E.D. Mich. April 27, 2011) ("It is not enough for plaintiff to declare generally that all other [employees] were treated better... without any specifics..."); *Baur v. J.B. Hunt Transport, Inc*., No. 01-cv-10266, 2002 WL 1798894, at *6 (E.D. Mich. Aug. 5, 2002); *Bell v. Ohio State Univ*., 351 F.3d 240, 253 (6th Cir. 2003) (claiming a general awareness that others were treated differently is not sufficient to establish the fourth element). Thus, Campell has not made out a prima facie case of racial discrimination.

Furthermore, even if Campell had made out a prima facie case of racial discrimination, EQT has offered legitimate, non-discriminatory reasons for discharging him– his alleged personal use of a company credit card, alleged vandalism of a pipe in order to claim overtime, failure to sign medical release forms, and failure to appear at the investigatory meeting. Campell cannot show that these reasons are mere pretexts. Plaintiffs may show pretext by offering evidence that the employer's reasons: 1) have no basis in fact, 2) did not really motivate the action, or 3) are insufficient to justify the employment action. *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (citation omitted). The first method is a challenge to the factual basis for the employer's stated reason. The plaintiff would need evidence "that the proffered bases for the

8

discharge never happened." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds).

Campell does not deny failing to sign the release forms or failing to appear at the investigatory meeting. It is possible that these instances of misconduct alone would constitute a sufficient basis for termination.[3] He does, however, deny drilling holes in the pipes, so the Court will address this denial. [R. 22 at 8.] General denials, without any affirmative evidence to call into question the truth of the employer's accusations, are typically insufficient to defeat a motion for summary judgment. *Terwilliger v. GMRI, Inc.*, 952 F.Supp. 1224, 1230 (E.D. Mich. 1997) (citing *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990)).

Additionally, an independent arbitrator found that the termination was for just cause, and that EQT's evidence of vandalism was "circumstantial but compelling." [R. 17 at 9; R. 22 at 6.] While not to be considered conclusive evidence, courts may consider such arbitration decisions as persuasive evidence that the employee was in fact terminated for just cause. *Becton v. Detroit Terminal of Consol. Freightways*, 687 F.2d 140, 142 (6th Cir. 1982). Furthermore, the relevant inquiry is not whether Campell actually engaged in this misconduct, but whether EQT genuinely believed he did. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). Campell has produced no evidence suggesting that EQT did not believe he committed these acts, and the evidence before the Court suggests the opposite. EQT carefully investigated the instances of misconduct, using its staff attorney and even an independent company to help reach a conclusion. *See Id.* at 807 (courts should consider "whether the employer made a reasonably

---

[3] He does not address the alleged personal use of the company credit card in his response to the motion for summary judgment.

informed and considered decision before taking an adverse employment action") (citation omitted). In the absence of any affirmative evidence to the contrary, Campell has not sufficiently called into question the allegations of misconduct, and thus, has not shown that EQT's stated reason for terminating him has no basis in fact.

The third method of showing pretext calls for proof that similarly situated employees were not fired even though they engaged in the same conduct. *Manzer*, 29 F.3d at 1084; *Heath v. Ohio Turnpike Com'n*, 85 Fed. App'x 494, 497 (6th Cir. 2004). For the reasons stated above, Campell has not shown that this is the case. With the second method, the plaintiff must essentially attack the employer's credibility, arguing that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a … coverup." *Manzer,* 29 F.3d at 1084. In order to make this showing, "the plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of … discrimination." *Id*.

Campell seems to be arguing that EQT's stated reasons are really just a "coverup" for racial discrimination. In the complaint, Campell alleges he "did not receive the same consideration by Combs in his work conditions, including work trucks, tools, overtime, cell phone usage, and termination." [R. 1, Attach. 1.] The specific examples of discrimination Campell gives are: 1) an allegation that police officers were waiting for him at the investigatory meeting [R. 22 at 8], 2) the fact that a sheriff delivered his termination letter [*Id*.], and 3) statements made by Combs that Campell claims show racial bias. [*Id*. at 9.] First, there is no evidence that police were at the investigatory meeting. EQT has denied this allegation and has provided a declaration to support the denial. [R. 24; Attach. 2.] Campell has admitted he was not

at the meeting, and "general denials and factual allegations not based on personal knowledge are insufficient to avoid summary judgment." *King Records, Inc. v. Daily*, No. 3:03-cv-1130, 2007 WL 398140, at *7 (M.D. Tenn. Jan. 31, 2007) (citing *Mitchell v. Toledo Hospital*, 964 F.2d 577, 584-85 (6th Cir. 2007)).

Second, the fact that a sheriff delivered the termination letter is not per se evidence of racial discrimination. EQT has provided a declaration from Gardner, indicating that it used this particular method because Campell made statements during the February 9 phone call that Gardner interpreted as threatening.[4] [R. 18, Attach. 6 at 3.] Finally, Campell alleges Combs told him he was a "liability" and made other comments that indicate racial bias. Specifically, Campell testified that Combs told him "the company gets a kick out of me complaining about, you know, him making differences and stuff. Said I'm actually doing him a favor. He said he wished [I'd] go ahead and complain – that I would complain more about it, because every time I complained about it, he got a big, old raise." [R. 22 at 9.] Campell has failed to explain how this comment indicates a racial bias.

In sum, Campell has simply not offered sufficient evidence to indicate that EQT's proffered reason for his termination is a pretext. He "relies primarily on his personal opinions and suspicions," and "in the absence of an evidentiary basis, such suspicions are insufficient to survive a motion for summary judgment." *Meads*, 2010 WL 3168091, at *7. EQT has offered legitimate, non-discriminatory reasons for terminating Campell. An independent company has verified that the holes Campell repaired were caused by drilling and not by corrosion, as Campell

---

[4] Gardner claims Campell said that "his residence was in a secluded area, that the area was populated by his friends and family, and that anyone from the Company who came to his residence may face trouble."

claimed. An analysis of gasoline used by EQT employees led EQT's staff attorney to conclude Campell was using the company credit card for personal use. Campell admits he never signed the medical release forms and that he failed to appear at the investigatory meeting as ordered by his supervisor. An independent arbitrator held a hearing, reviewed the evidence of misconduct, heard testimony on the matter, and concluded that Campell "engaged in a multi-faceted but ultimately transparent scheme of breaching his responsibilities to the Company, which culminated with his refusal to cooperate and to attend the meeting scheduled for February 12, 2007." [R. 17 at 9.] Campell has not discredited EQT's stated reasons for terminating him, and thus, the Court finds that a reasonable jury could not conclude that these reasons are mere pretexts.

**B.**

In the complaint Campell also alleges that EQT discriminated against him because he is disabled. [R. 1, Attach. 1.] He did not, however, address this claim in his response to EQT's motion for summary judgment. Thus, the Court may consider this claim waived. *See Maxwell v. City of Columbus*, No. 2:08-cv-264, 2011 WL 2493525, at *11 (S.D. Oh. June 21, 2011) (citing *United States v. Sandridge*, 385 F.3d 1032, 1035-36 (6th Cir. 2004)). Even if Campell had not waived the claim, it would fail on the merits. To establish a prima facie case of disability discrimination, the plaintiff must show: "1) that he had a disability as that term is used under the Kentucky Civil Rights Act, 2) that he was otherwise qualified to perform the requirements of the job, with or without reasonable accommodation, and 3) that he suffered an adverse employment decision because of the disability." *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 706-707 (Ky. Ct. App. 2004) (citations omitted).

12

Campell has completely failed to identify any disability. The record does indicate that he missed a great deal of work and was assigned to sedentary duty for three months [R. 16 at 3], but it was *EQT* that brought these facts to the Court's attention, and Campell does not elaborate on or otherwise develop these facts. Moreover, he has not presented evidence to suggest he was terminated because of any alleged disability. As discussed above, the Court finds that EQT has met its burden of articulating a legitimate, non-discriminatory reason for terminating him, and Campell has failed to show the reason is a pretext.

## C.

Finally, Campell claims he was retaliated against for complaining about discrimination. He points to the fact that he was terminated within days of the February 9 phone call to Gardner in which he complained of discrimination. He also believes the fact that a sheriff served his termination papers is evidence of retaliation. [R. 22 at 10.] To make out a prima facie case of retaliation, the plaintiff must show: 1) he engaged in a protected activity, 2) this activity was known by the defendant, 3) the defendant then took adverse employment action against the plaintiff, and 4) there was a causal connection between the protected activity and the adverse employment action. *Christopher v. Stouder Memorial Hospital*, 936 F.2d 870, 877 (6th Cir. 1991).

Campell cannot show a causal connection between the termination and his complaining about discrimination. The investigation into his misconduct was already long underway when he complained of discrimination to Gardner on February 9. In fact, the investigatory meeting was the last step in the process, and his termination was likely already inevitable at that point. Temporal proximity between making a complaint of discrimination and the adverse employment

13

action is not enough alone to establish the required nexus. *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582-83 (6th Cir. 2000). More importantly in this case, employees may not immunize themselves from adverse employment action by claiming discrimination. The Sixth Circuit has held:

> The wisdom of [the] rule that [temporal proximity, by itself, is not enough to present a genuine issue of material fact in a retaliation case] is evident in a case such as this, where the employee was accused of insubordination before she notified the employer of her protected activity. Insubordinate employees may not insulate themselves from discipline by announcing an intention to claim discrimination just before the employer takes action. Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity.

*Hamilton v. General Elec. Co.*, 556 F.3d 428, 440 (6th Cir. 2009) (citing *Hervey v. County of Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008)). Thus, Campell has failed to establish a prima facie case of retaliation.

**IV.**

Accordingly, and being sufficiently advised, EQT's Motion for Summary Judgment [R. 15] is **GRANTED**. A separate judgment will follow.

This the 8th day of August, 2011.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge